IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| **WILLIE JAMES JONES,** | ) | **CASE NO. 8:05CV233** |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **MEMORANDUM** |
| | ) | **AND ORDER** |
| **DOUGLAS COUNTY CORRECTIONS CENTER**, and the **STATE OF NEBRASKA,** | ) ) ) | |
| | ) | |
| **Defendants.** | ) | |

## INTRODUCTION

This lawsuit was filed against the Douglas County Corrections Center ("DCC") and the State of Nebraska on May 18, 2005. See Filing No. 1. The plaintiff alleges his repeated requests for a trustee job at the prison have been wrongfully denied. He requests injunctive relief and damages.

Following initial review of plaintiff's complaint, the Clerk issued two summons for service upon the defendants. Although more than two years have elapsed since the plaintiff filed his complaint, there is nothing of record indicating the plaintiff served or even attempted to serve the State of Nebraska. The State of Nebraska has not voluntarily entered an appearance in this case.

A federal trial court has the inherent power to dismiss a plaintiff's action with prejudice for failure to prosecute. Link v. Wabash R. Co. 370 U.S. 626, 629 (1962). "[W]hen circumstances make such action appropriate, a District Court may dismiss a complaint for failure to prosecute even without affording notice of its intention to do so or providing an adversary hearing before acting." Link v. Wabash R. Co., 370 U.S. 626, 633 (1962). Under the totality of the circumstances presented in this case, I find that with respect to defendant State of Nebraska, the plaintiff's claim should be dismissed with prejudice for failure to prosecute.

The plaintiff did, however, serve the DCC. The DCC's answer denies the allegations of the plaintiff's complaint and further alleges that the plaintiff failed to state a claim upon which relief may be granted, and failed to exhaust administrative remedies prior to filing suit. See Filing No. 22.

Pending before me is DCC's motion for summary judgment filed on May 10, 2007. Filing No. 38. DCC argues plaintiff's claim lacks legal merit because he does not allege loss of any statutory or constitutional rights, or that this loss was caused by the policies and customs of the DCC. Defendant DCC further argues that the plaintiff's claims must be

denied because he failed to comply with the exhaustion requirements set forth in the Prisoner Litigation Reform Act (hereinafter "PLRA").

The plaintiff did not respond to the summary judgment motion, and the deadline for responding has now passed. The motion is deemed submitted. As the following explains, DCC's motion for summary judgment will be granted, and judgment will be entered against the plaintiff.

## MOTION FOR SUMMARY JUDGMENT

### Standard of Review

A motion for summary judgment is "properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986). In response to the moving party's evidence, the opponent's burden is to "come forward with 'specific facts showing that there is a genuine issue for trial.'" Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

> Once the moving party has met its burden of showing "the absence of a genuine issue of material fact and an entitlement to judgment as a matter of law[,] . . . the non-moving party may not rest on the allegations of his pleadings, but must set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists."

Krein v. DBA Corp., 327 F.3d 723, 726 (8th Cir. 2003) (quoting Stone Motor Co. v. Gen. Motors, Corp., 293 F.3d 456, 465 (8th Cir. 2002)(internal citations omitted)).

### Statement of Undisputed Facts

The plaintiff became an inmate in the DCC on February 2, 2005. See Filing No. 1, p. 5. Upon entering that institution, the plaintiff was given a copy of the Douglas County Correctional Center Inmate Rules and Regulations Handbook, which outlines the rules and regulations inmates must follow while incarcerated at that facility. Filing No. 40, ex. 19 (Hubbard affidavit), ¶ 5.

The DCC has an Inmate Trustee Program. Filing No. 40, ex. 1, pp. 25-26. The program "affords qualified inmates the opportunity to work outside their module under the supervision of correctional staff." Filing No. 40, ex. 1, § 8.1 (A). Those inmates interested in becoming a trustee may submit an Inmate Request Form to the DCC's Trustee Committee. In accordance with the published DCC regulations, to be considered for the program, the inmate: 1) cannot be subject to any "holds" or warrants; 2) must not have

2

received disciplinary action within the past thirty (30) days; 3) must be subject to a bond set at or below the established cap for pre-trial inmates; 4) must be currently incarcerated on a non-violent charge; 5) must not have a past criminal history that includes an extensive history of violent charges or serious drug involvement; and 6) cannot have medical restrictions. Filing No. 40, ex. 1, § 8.1 (A)(1-6). The Trustee Committee is also authorized to consider additional information as necessary in determining which inmates will be accepted into the program. Filing No. 40, ex. 1, § 8.1 (A).

Once the DCC Trustee Committee has reached a decision on an inmate's request, that decision is final. An inmate can reapply for admission to the program "following a reduction in bond or sentencing." However, "[d]ecisions based on current charge or recent criminal history will remain." No. 40, ex. 1, § 8.1 (B).

Nonetheless, over the course of the first six months of plaintiff's DCC incarceration, he submitted fifteen inmate requests and two grievances asking to be assigned to a trustee position. The following summarizes these requests and grievances, and the DCC's response:

- On February 21, 2005, the plaintiff sent an inmate request stating he wanted to become a trustee. The DCC denied this request on February 22, 2005 due to the plaintiff's "current charges." Filing No. 40, ex. 16.

- The plaintiff submitted substantially the same inmate request on February 23, 2005. DCC again denied the plaintiff's request for a trustee position "due to the nature of [plaintiff's] charges." Filing No. 40, ex. 17.

- On April 7, 2005, the plaintiff submitted another inmate request stating he wanted an trustee position. DCC denied this request on April 11, 2005, stating the plaintiff could not become a trustee due to this criminal history classification. Filing No. 40, ex. 15.

- On May 3, 2005, the plaintiff submitted an inmate request asking why other inmates with worse criminal records were permitted to become trustees, while he was denied that opportunity. On May 4, 2005, the DCC responded that plaintiff should "send a kite to classifications they will explain your situation to you." Filing No. 40, ex. 18.

- On May 5, 2005, the plaintiff filed both a grievance and an inmate request.

  The grievance challenged DCC's procedure for becoming a trustee. The plaintiff stated that other inmates with charges such as his, and inmates with even worse charges (arson, multiple assaults, theft, ect.), were permitted to become trustees, yet he was denied. DCC responded on May 9, 2005, explaining that plaintiff's request to become a trustee was denied due to "current charges Felony assault." Filing No. 40, ex. 3. The plaintiff received

3

a copy of this determination, (see Filing No. 40, ex. 3), but did not file an appeal.[1]  Filing No. 40, ex. 19 (Hubbard affidavit), ¶ 24.

The May 5, 2005 inmate request asked "what charges can you have and not have to get a trustee job. Why am I so different, when others have the same charges that I do, or [worse] charges than me."  On May 9, 2005, DCC responded that under its trustee criteria, the plaintiff was ineligible for the program.  Filing No. 40, ex. 13.

- On May 8, 2005, the plaintiff filed an inmate request asking for information on how trustees are chosen and why some are allowed to work more than one job, while others are not allowed to work as trustees.  On May 12, 2005, DCC told the plaintiff to "File a grievance so it will be looked into."  Filing No. 40, ex. 12.

- The plaintiff's May 10, 2005 inmate request asked DCC to explain what charges on his record disqualified him from becoming a trustee.  He stated he had only a misdemeanor record and DCC must correct its records.  DCC responded on May 11, 2005 that plaintiff's request to be a trustee was denied because of his felony record of domestic violence assault, and if the DCC record was incorrect, the plaintiff should contact his attorney.  Filing No. 40, ex. 14.

- On May 27, 2005, the plaintiff filed an inmate request stating he had shown his criminal history listing on file in the DCC computer to his attorney, and the attorney stated it was wrong and he would take care of it.  On May 31, 2005, DCC responded, "You do not qualify at this time.  Refer to the previous kite outlining the reason for your disqualification. *Presently charged with felony assault DV."    Filing No. 40, ex. 11.

- On June 22, 2005, the plaintiff filed a grievance stating he had requested a trustee position five times, and had been denied every time due to his past criminal history.  DCC responded on June 30, 2005, that the plaintiff was being denied a trustee position because, according to computer records, he has an active "felony DV" charge and two active warrants.  The plaintiff was advised that if the felony DV charges had been dropped, he should contact his attorney for assistance in correcting his criminal history record. Filing No. 40, ex. 2.  The plaintiff received a copy of the grievance determination, (see Filing No. 40, ex. 2), but he did not file an appeal.  Filing No. 40, ex. 19 (Hubbard affidavit), ¶ 24.

---

[1]Of note, the plaintiff's pending complaint was signed on May 11, 2005, and filed on May 18, 2005.  See Filing No. 1.

4

- The plaintiff filed an inmate request on July 20, 2005, two inmate requests on July 22, 2005, and an inmate request on July 26, 2005, all of which stated, in essence, that his roommate was initially denied a trustee position due to his past criminal history, then granted the position without explanation, but the plaintiff did not get a trustee position. He questioned whether he was being "black balled." Filing No. 40, exs. 6, 7, 8 & 10.

   DCC did not respond to the July 20, 2005 inmate request because it was not signed. Filing No. 40, ex. 7.

   On July 28, 2005, DCC responded to the July 22, 2005 inmate request by explaining. "You were denied trustee per classifications for a past charge of felony domestic violence. Any more questions should be directed to classifications. The other guy has no serious criminal charges." Filing No. 40, ex. 8. See also Filing No. 40, ex. 10 (including allegations of "black balling" the plaintiff and DCC's response explaining plaintiff was denied a trustee position due to his pending felony domestic violence charge).

   DCC responded to the July 26, 2005 inmate request on August 1, 2005, stating, "Your grievance was answered on this matter." Filing No. 40, ex.6.

- On July 27, 2005, the plaintiff filed an inmate request asking for some explanation as to the pending felony charges against him. On July 29, 2005, DCC responded that its computer showed the plaintiff was subject to a felony protective order violation and a felony domestic violence-assault charge. "If this is not correct contact your atty to get the computer updated." Filing No. 40, ex. 9.

- The plaintiff's August 1, 2005 inmate request asked DCC to confirm that no trustees currently working had a "DV or felony or ASLT" on his record. He further claimed that the computer record showing he had a pending felony charge was incorrect; that this charge was dropped and it was not his job to update DCC's computer. Filing No. 40, ex.5. On August 3, 2005, the DCC responded:

   > You will have to send a kite to classifications about this. They have guidelines to go by to approve inmates to be trustees. We only assign them after they are approved. Also trustee jobs are a privilege, not a right in this facility.

   Filing No. 40, ex.5.

Pursuant to section 11 of the DCC Inmate Rules and Regulations Handbook, if an inmate does not agree with a grievance determination, he can obtain an additional

5

grievance form and appeal the decision to the Chief Deputy of Corrections.[2] The Chief Deputy of Corrections must then review the grievance and issue a response. If the inmate disagrees with the Chief Deputy of Corrections' response, the inmate is not precluded from seeking other remedies. However, the Handbook clearly warns that "internal remedy requests are usually required prior to submitting a complaint to an outside agency or group." Filing No. 40, ex. 1, § 11.2 (D).

The plaintiff signed his complaint on May 11, 2005, and his lawsuit was filed on May 18, 2005. See Filing No. 1. Since the plaintiff never appealed the responses to his May 5, 2005 and July 22, 2005 grievances, DCC did not have an opportunity to formally address his claims and consider potential remedies prior to the filing of this lawsuit. Filing No. 40, ex. 19 (Hubbard affidavit), ¶¶ 24-25.

## Legal Analysis

Section 1997e (a) of the PLRA provides:

No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility *until such administrative remedies as are available are exhausted*.

42 U.S.C. § 1997e(a)(emphasis added). Pursuant to § 1997e(a), a prisoner must exhaust all administrative remedies available through the prison system before filing a lawsuit challenging prison conditions. This exhaustion requirement is mandatory; the court cannot, in its discretion, waive this requirement. Woodford v. Ngo. 126 S.Ct. 2378, 2382 (2006).

The PLRA's exhaustion requirement serves two purposes. It affords the agency an opportunity to "correct its own mistakes with respect to the programs it administers before it is haled into federal court" while discouraging prisoners from disregarding the prison's procedures, and it promotes efficiency. Woodford, 126 S.Ct. at 2385.

> The PLRA attempts to eliminate unwarranted federal-court interference with the administration of prisons, and thus seeks to afford corrections officials time and opportunity to address complaints internally before allowing the

---

[2]The plaintiff was aware of the grievance appeal procedure and the consequences of failing to follow the procedure. On June 29, 2005, he appealed a grievance determination and requested an appeal hearing because the DCC was "clearly try[ing] to keep [his] grievance from . . .the United States District Court." Filing No. 40, ex. 4. However, based on the language of the DCC determination, it is apparent that this grievance appeal is unrelated to the allegations raised in this case.

6

> initiation of a federal case. The PLRA also was intended to reduce the quantity and improve the quality of prisoner suits.

Woodford, 126 S.Ct. at 2387 (internal citations and quotation marks omitted).

The plaintiff's complaint alleges that despite his repeated requests, he was wrongfully denied DCC trustee positions. The DCC has an explicit and published grievance procedure for resolution of prisoner complaints. As to those grievances filed by the plaintiff, DCC timely responded in accordance with its internal regulations. The plaintiff was notified of the grievance determination. Although that DCC grievance procedure afforded the plaintiff an opportunity to appeal any adverse decision to the Chief Deputy of Corrections, the plaintiff never pursued this available administrative process.

> The benefits of exhaustion can be realized only if the prison grievance system is given a fair opportunity to consider the grievance. The prison grievance system will not have such an opportunity unless the grievant complies with the system's critical procedural rules. A prisoner who does not want to participate in the prison grievance system will have little incentive to comply with the system's procedural rules unless noncompliance carries a sanction. . . .

Woodford, 126 S.Ct. at 2388.

Based on the undisputed facts, the plaintiff's noncompliance with the DCC grievance process warrants dismissal of his case. Instead of exhausting the DCC grievance process, the plaintiff filed a lawsuit. The claim set forth in the plaintiff's complaint arises from decisions made by the DCC in 2005, but the plaintiff did not and can no longer timely file or appeal grievances related to these decisions. Accordingly, the court must grant defendant's motion for summary judgment, and dismiss the plaintiff's complaint with prejudice for failure to comply with the exhaustion requirement set forth in 42 U.S.C. § 1997e(a). See e.g. Woodford, 126 S.Ct. at 2384 (holding dismissal of plaintiff's complaint was required where the inmate alleged the prison wrongfully prohibited his participation in special prison programs, but failed to timely comply with the California prison system's grievance process before filing his federal lawsuit); Lyon v. Vande Krol, 305 F.3d 806, 809 (8th Cir. 2002)(reversing a judgment in favor of the inmate where he failed to exhaust the proson grievance system before filing his lawsuit); Fudge v. May, 84 Fed.Appx. 702, 703 (8th Cir. 2003)(affirming summary judgment for the defendants where, under the prison's grievance procedure, the plaintiff could not longer timely file grievances for the events underlying his complaint).

THEREFORE, IT IS ORDERED:

1. The plaintiff's claim against defendant State of Nebraska is dismissed with prejudice for want of prosecution;

7

2. The motion for summary judgment filed by defendant Douglas County Corrections Center, Filing No. 38, is granted;

3. The plaintiff's motion for information regarding the status of his case, Filing No. 46, is denied as moot; and

4. Judgment will be entered in accordance with this Memorandum and Order.

DATED this 8th day of August, 2007.

BY THE COURT:

s/Laurie Smith Camp
United States District Judge